UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

____

JOSEPH PUZZO,

          Plaintiff,

v.

METROPOLITAN LIFE INSURANCE COMPANY,

          Defendant.

_____

Civil Action No. 15-3190 (FLW)(LHG)

**OPINION**

**WOLFSON, United States District Judge**:

      This case concerns the denial of disability benefits under a disability insurance policy and an employee benefits plan covered by the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001, *et seq*. Although Defendant Metropolitan Life Insurance Company ("Metlife" or "Defendant") paid disability benefits to Joseph Puzzo ("Puzzo" or "Plaintiff") under both policies for a period of time following his injury, it subsequently terminated those benefits. Plaintiff appealed that adverse benefits determination pursuant to the administrative remedies available under the policy covered by ERISA. When Defendant failed to issue a timely decision on Plaintiff's administrative appeal, Plaintiff brought suit in this Court seeking coverage under both policies.

      Presently before the Court is Defendant's motion, pursuant to Federal Rules of Civil Procedure 12(b)(6) and 56, seeking dismissal of, or judgment upon, Plaintiff's Amended Complaint based on failure to exhaust administrative remedies, and Plaintiff's cross-motion, pursuant to Federal Rule of Civil Procedure 15(a), for leave to file a second amended complaint to assert a bad faith claim in connection with his individual disability insurance policy. For the

1

following reasons, Defendant's motion is DENIED and Plaintiff's cross-motion is DENIED without prejudice.

I.     FACTUAL BACKGROUND AND PROCEDURAL HISTORY

The following facts are taken from the Amended Complaint, unless otherwise noted. Until the onset of his alleged disability, Puzzo was employed by GFI Group, Inc. ("GFI") as an Exotic Foreign Exchange Options Broker and Desk Head. Am. Compl. ¶ 7. By virtue of his employment by GFI, Puzzo was insured by Metlife under the GFI Group, Inc. Benefits Plan, Policy No. 146226-1-G (the "Plan"). *Id.* ¶¶ 3, 8; *see generally* Compl. Ex. A. Although GFI is the policyholder and plan administrator under the Plan, it has designated Metlife as the claims fiduciary to evaluate claims and pay benefits under the Plan. Am. Compl. ¶ 9. Metlife also insured Puzzo under an Individual Disability Insurance Policy, Policy No. 6574425 AH, ("IDI Policy"), which Puzzo alleges that he purchased himself. *Id.* at ¶¶ 4, 11; *see generally* Compl. Ex. B.

On May 16, 2012, Puzzo suffered serious injuries, including a traumatic brain injury, as a result of a car collision. Am. Compl. ¶ 15. Puzzo alleges that these injuries render him unable to work and, therefore, totally disabled. *Id.* Following his injury, Metlife provided Puzzo with short term disability benefits and, in July 2012, turned his file over to its long term disability department to consider his eligibility for long term disability benefits ("LTD Benefits"). *Id.* ¶ 44.

On July 13, 2012, Metlife acknowledged receipt of Puzzo's claim for LTD Benefits under the Plan; approved his claim for LTD benefits under the Plan on September 18, 2012; and informed Puzzo of its approval of LTD Benefits under the Plan on October 4, 2012. *Id.* ¶¶ 19, 45, 59, 61-62. Similarly, on August 7, 2012, Metlife acknowledged receipt of Puzzo's claim for benefits under the IDI Policy and approved that claim on September 12, 2012. *Id.* ¶ 22.

Plaintiff alleges that on March 28, 2014, Met Life terminated Puzzo's disability benefits under both the Plan and the IDI Policy.[1]  Compl. ¶¶ 23, 103; Puzzo appealed the termination of his benefits by letter dated October 22, 2014, which Metlife acknowledged receipt of by letter dated October 31, 2014.  *Id.* at ¶¶ 24, 104.  The parties apparently exchanged additional correspondence concerning Metlife's review of Puzzo's claims under the IDI Policy and Plan, although these documents have not uniformly been referenced in the Amended Complaint.[2]  However, Puzzo clearly alleges that, to date, Metlife has not issued a decision on his appeal of Metlife's denial of benefits under the Plan.  *Id.* at ¶ 117.

Plaintiff filed suit in this matter on May 6, 2015, and filed an Amended Complaint on July 15, 2015.  On August 21, 2015, Defendant filed the instant motion to dismiss under Rule 12(b)(6) or, in the alternative, for summary judgment pursuant to Rule 56.  On September 8, 2015, Plaintiff filed an opposition and cross-moved under Rule 15(a), seeking leave to file a second amended complaint to assert a claim of bad faith delay concerning his claim under the IDI Policy.

## II.  STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(6) provides that a court may dismiss a claim "for failure to state a claim upon which relief can be granted."  When reviewing a motion to dismiss,

---

[1] Plaintiff alleges that Defendant "streamlined" its handling of Plaintiff's claims under the Plan and IDI Policy, and that his "denial under both policies was a result of the same review." Am. Compl. ¶ 14. While the two policies had similar definitions of "disability," *see* Am. Compl. ¶¶ 10, 12, Defendant's March 28, 2014 denial letter only referenced the definition of disability contained in the Plan. Affidavit of Sara E. Kaplan (dated September 8, 2015) [hereinafter "Kaplan Aff."], ¶ 2, Ex. 1. Nevertheless, taking the allegations of Plaintiff's complaint as true, the Court assumes, for the purposes of this motion, that Metlife denied Puzzo's benefits under both the Plan and the IDI Policy on March 28, 2014. Am. Compl. ¶¶ 23, 103.

[2] As discussed in more detail below, although Defendant has moved to both dismiss pursuant to Rule 12(b)(6) and for summary judgment pursuant to 56, this additional correspondence does not change the outcome of this Court's decision. Accordingly, this Court will treat this motion as one for dismissal pursuant to Rule 12(b)(6).

courts must first separate the factual and legal elements of the claims, and accept all of the well-pleaded facts as true. *See Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-11 (3d Cir. 2009). All reasonable inferences must be made in the plaintiff's favor. *See In re Ins. Brokerage Antitrust Litig.*, 618 F.3d 300, 314 (3d Cir. 2010). In order to survive a motion to dismiss, the plaintiff must provide "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). This standard requires the plaintiff to show "more than a sheer possibility that a defendant has acted unlawfully," but does not create as high of a standard as to be a "probability requirement." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

The Third Circuit requires a three-step analysis to meet the plausibility standard mandated by *Twombly* and *Iqbal*. First, the court should "outline the elements a plaintiff must plead to a state a claim for relief." *Bistrian v. Levi*, 696 F.3d 352, 365 (3d Cir. 2012). Next, the court should "peel away" legal conclusions that are not entitled to the assumption of truth. *Id.*; *see also Iqbal*, 556 U.S. at 678-79 ("While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations."). It is well-established that a proper complaint "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (internal quotations and citations omitted). Finally, the court should assume the veracity of all well-pled factual allegations, and then "determine whether they plausibly give rise to an entitlement to relief." *Bistrian*, 696 F.3d at 365 (quoting *Iqbal*, 556 U.S. at 679). A claim is facially plausible when there is sufficient factual content to draw a "reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. The third step of the analysis is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

Generally, when determining a motion under Rule 12(b)(6), the court may only consider the complaint and its attached exhibits. However, while "a district court may not consider matters extraneous to the pleadings, a document integral to or explicitly relied upon in the complaint may be considered without converting the motion to dismiss into one for summary judgment." *Angstadt v. Midd-West Sch. Dist.*, 377 F.3d 338, 342 (3d Cir. 2004) (citation omitted); *see also In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997).

### III.   DISCUSSION

As a preliminary matter, this Court must address a fundamental distinction that exists between the two insurance policies at issue in this matter. While there is no dispute that the Plan constitutes an "employee benefit plan" covered by ERISA, the same cannot be said for the IDI Policy. *See* 29 U.S.C. §§ 1002(1), (2); 1003(a);

"ERISA sets out a comprehensive system for the federal regulation of private employee benefit plans, including both pension plans and welfare plans." *District of Columbia v. Greater Washington Bd. of Trade*, 506 U.S. 125, 127 (1992). "Subject to certain exemptions, ERISA applies generally to all employee benefit plans sponsored by an employer or employee organization." *Id.* (citing 29 U.S.C. § 1003(a)). To be covered by ERISA, an employee benefit plan must be established or maintained either:

> (1) by any employer engaged in commerce or in any industry or activity affecting commerce; or
>
> (2) by any employee organization or organizations representing employees engaged in commerce or in any industry or activity affecting commerce; or
>
> (3) by both.

29 U.S.C. § 1003(a).

Plaintiff does not allege that the IDI Policy was established or maintained by his employer or any employee organization; instead, he alleges that he purchased the IDI Policy himself. *See*

5

Am. Compl. ¶ 11. Nothing in the IDI Policy indicates it was established or maintained by GFI, Plaintiff's employer, or by some other "employee organization." *See* Compl. Ex. B. Indeed, Plaintiff does not even allege that jurisdiction exists over his claim under the IDI Policy based on the existence of a federal question, 28 U.S.C. § 1331 (*i.e.*, because it is covered by ERISA), but rather that jurisdiction exists over that claim on the basis of diversity and ancillary jurisdiction, 28 U.S.C. §§ 1332, 1367. Am. Compl. ¶ 5. Moreover, the IDI Policy itself lacks the appeal process contained in the Plan, and at issue in this matter, precisely because it is not designed to be covered by ERISA. *See* Compl. Ex. B.

Because the IDI Policy is not an "employee benefit plan" covered by ERISA, there is no requirement for Plaintiff to exhaust administrative remedies before filing suit against Defendant for the denial of benefits under the IDI Policy.[3] Accordingly, to the extent that Defendant's motion is based on a failure to exhaust administrative remedies under the IDI Policy, it is denied.

### A. Failure to Exhaust Administrative Remedies

With respect to Plaintiff's claims under the Plan, which is covered by ERISA, Defendant argues that Plaintiff has failed to exhaust his administrative remedies under the Plan because Plaintiff brought this action before Defendant issued a final decision on his appeal of the adverse benefits determination. However, Defendant has failed to issue its final decision within the time

---

[3] The Court notes that the IDI Policy contains a suit limitation provision, which provides: "No legal action may be brought until 60 days after Written proof of loss has been provided to Us. No such action may be brought after 3 years from the time Written proof of loss is required to be provided to Us." Am. Compl. 20; Compl. Ex. B at 14. Defendant acknowledged receipt of Plaintiff's claim under the IDI Policy on August 7, 2012. Am. Compl. 22. Therefore, even assuming, without deciding, that the clock on the limitation period did not restart when Defendant allegedly stopped paying benefits on March 28, 2014, this suit, filed on May 6, 2015, was timely filed.

6

period provided for its review of Plaintiff's appeal and, therefore, Plaintiff is deemed to have exhausted his administrative remedies.

Under ERISA, claimants are required to exhaust administrative remedies prior to bringing suit to enforce terms of the plan. *D'Amico v. CBS Corp.*, 297 F.3d 287, 290-91 (3d Cir. 2002). Because ERISA requires benefit plans to provide an administrative appeals process, 29 U.S.C. § 1133, a participant of an ERISA plan may only seek judicial review once his appeal has been denied by the plan administrator. *Lewis-Burroughs v. Prudential Ins. Co. of Amer.*, No. 14-1632, 2015 U.S. Dist. LEXIS 57584, at *13 (D.N.J. Apr. 30, 2015); *see also Fontana v. Diversified Grp. Admins., Inc.*, 67 F. App'x 722, 724 (3d Cir. 2003) ("An action to recover for denial of benefits under ERISA accrues when an application for benefits is formally denied.") (internal quotation marks and citation omitted). "The ERISA exhaustion requirement is an affirmative defense, so the defendant bears the burden of proving failure to exhaust." *Am. Chiropractic Ass'n v. Am. Specialty Health, Inc.*, 625 F. Appx. 169, 173 (3d Cir. 2015) (citing *Metro. Life Ins. Co. v. Price*, 501 F.3d 271, 280 (3d Cir. 2007)).

While the exhaustion requirement in ERISA cases is, generally speaking, "strictly enforced," *Berger v. Edgewater Steel Co.*, 911 F.2d 911, 916 (3d Cir. 1990), *cert. denied*, 499 U.S. 920 (1991), the exhaustion requirement is waived "when the participant has filed an administrative appeal from the denial of benefits, but the plan provider has failed to timely decide it." *Lewis-Burroughs*, 2015 U.S. Dist. LEXIS 57584, at *13 (citing *Mass. Mut. Life Ins. Co. v. Russel*, 473 U.S. 134, 144 (1985)). ERISA regulations provide, in relevant part, that:

> In the case of the failure of a plan to establish or follow claims procedures consistent with the requirements of this section, a claimant shall be deemed to have exhausted the administrative remedies available under the plan and shall be entitled to pursue any available remedies under section 502(a) of the Act on the basis that the plan has failed to provide a reasonable claims procedure that would yield a decision on the merits of the claim.

7

29 C.F.R. § 2560.503-1(*l*); *Lewis-Burroughs*, 2015 U.S. Dist. LEXIS 57584, at *13-14 ("If the deadline to decide an appeal passes without a decision, the plan participant's claim is 'deemed denied' and her administrative remedies are presumed exhausted.") (citing *Russell*, 473 U.S. at 144). Thus, if the plan administrator fails to follow the appeals timeline designated by the plan, a claimant is entitled to bring suit before the administrator decides his appeal. 29 C.F.R. § 2560.503-1(*l*); *see also Heimeshoff v. Hartford Life & Accident Ins. Co.*, __ U.S.__, 134 S. Ct. 604, 613 (2013) (generally outlining the internal review process as the "first tier of ERISA's remedial scheme").

The Plan at issue in this matter sets forth a 45-day time period in which Defendant was required to render a determination on Plaintiff's appeal of the adverse benefits decision:

**Appealing the Initial Decision**

. . . .

MetLife will notify you in writing of its final decision within a reasonable period of time, but no later than 45 days after MetLife's receipt of your written request for review, except that under special circumstances, MetLife may have up to an additional 45 days to provide written notification of the final decision. If such an extension is required, MetLife will notify you prior to the expiration of the initial 45 day period, state the reason(s) why such an extension is needed, and state when it will make its determination. . . . .

Compl. Ex. A at 811; *see also* 29 C.F.R. §§ 2560.503-1(h)(4)(i)(1)(i); 2560.503-1(i)(3)(i). The Plan also provides that "[i]f an extension is needed because [the claimant] did not provide sufficient information, the time period from MetLife's notice to you of the need for an extension to when MetLife receives the requested information does not count toward the time MetLife is allowed to notify you of the final decision." Compl. Ex. A at 811; *see also* 29 C.F.R. § 2560.503-1(h)(4)(i)(4) ("In the event that a period of time is extended . . . due to a claimant's failure to submit information necessary to decide a claim, the period for making the benefit determination on review

8

shall be tolled from the date on which the notification of the extension is sent to the claimant until the date on which the claimant responds to the request for additional information."). However, while a plan administrator's request for additional information from a claimant tolls the review period until the claimant responds, 29 C.F.R. § 2560.503-1(h)(4)(i)(4), it does not "restart" the time period for review. *See Lewis-Burroughs*, 2015 U.S. Dist. LEXIS 57584 at *17-20 (holding that the "clock does not, as Prudential suggests, *restart from zero* when Prudential receives the 'necessary' information from the applicant. Rather, the clock's running is *suspended* from the date that Prudential sends the notification of extension until the date the plan holder furnishes the 'necessary' information.") (emphasis in original); *Lavino v. Metro. Life Ins. Co.*, 779 F. Supp. 2d 1095, 1101 n.1 (C.D. Cal. 2011); *Tomassi v. Prudential Ins. Co. of Am.*, No. 06 C 5564, 2007 U.S. Dist. LEXIS 44223, *13 (N.D. Ill. June 19, 2007). Instead, the Plan provides only that this time "does not count toward the time MetLife is allowed to notify you of the final decision." Compl. Ex. A at 811.

Defendant acknowledged receipt of Plaintiff's appeal by letter dated October 31, 2014, Am. Compl. ¶¶ 24, 104. Therefore, the initial 45-day time period for Defendant's review provided in the Plan expired on December 15, 2014. During that time period, Defendant failed to notify Plaintiff that any additional documentation was required to review Plaintiff's claim under the Plan, or that any extension was necessary due to "special circumstances."[4] As no documents were

---

[4] Although not referenced in, or attached to, the pleadings, the Court notes that the record provided on this motion does reflect that on December 12, 2014, with 3 days remaining in the review period for Plaintiff's claims under the Plan, Defendant wrote to Plaintiff regarding the status of its review of the claim under the IDI Policy. Kaplan Aff. ¶ 10, Ex. 9. Importantly, this letter specifically references – both by name and policy number – only Plaintiff's claim under the IDI Policy, not the Plan. *Id. But see* Am. Compl. ¶ 14 (alleging Defendant "streamlined" its claims handling under both policies). However, even were this Court to consider the December 12, 2014 letter and the subsequent correspondence, the outcome of Defendant's motion does not change and summary judgment would be denied.

requested, no extension request was made, and no final decision was issued by Defendant on or before December 15, 2014, Plaintiff is deemed to have exhausted his administrative remedies as

---

First, the December 12, 2014 letter does not state that Plaintiff failed to provide "sufficient information" to allow Defendant to consider the appeal. *See* Compl. Ex. A at 811; 29 C.F.R. § 2560.503-1(h)(4)(i)(4). Instead, the letter merely stated that (1) Defendant's physician had drafted a letter that was forwarded to Plaintiff's physician, "requesting his confirmation of the details of their [previous] conversation," and (2) that Plaintiff's authorization had expired, and requested that a new authorization be executed by Plaintiff, but did not identify any particular medical records that Defendant was seeking to obtain at that time. Kaplan Aff. ¶ 10, Ex. 9. Nor did the letter make any reference to an extension being required due to "special circumstances." *Id.* Thus, even if this letter were properly before the Court, I would find that the December 12, 2014 letter did not toll the time period for Defendant to render a decision on Plaintiff's appeal, and that Defendant's time to review Plaintiff's appeal expired on December 15, 2014.

Second, even if the review period was tolled solely so that Defendant could receive "confirmation" of information it already possessed, that period would nevertheless have expired prior to Plaintiff's filing of suit in May 2015. The record reflects that (1) the parties exchanged additional information and, by letter dated February 9, 2015, Defendant acknowledged receipt of additional medical records from Plaintiff's medical providers and Plaintiff's updated authorization form; and (2) by letter dated March 6, 2015, Defendant wrote to Plaintiff to inform him that his claim under the IDI Policy was still under review, but made no mention of requiring any additional documentation from Plaintiff. Kaplan Aff. ¶¶ 9, 10, Ex.'s 8, 9. Thus, on March 6, 2015, the review period, with 3 days remaining, began to run again. In that time period, Defendant neither requested any new information from Plaintiff, nor informed Plaintiff that an extension was required due to "special circumstances." Thus, even giving Defendant the benefit of all these assumptions (despite being the moving party), the time period to review Plaintiff's appeal and issue a final decision expired – at latest – on March 9, 2015.

Similarly, the Court need not address whether the parties continued to exchange correspondence and medical information after March 9, 2015, *see, e.g.*, Kaplan Aff. ¶ 10, Ex. 9, because a plan administrator's request for additional medical examinations does not toll the deadline to render a claim decision where, as here, it is made after that deadline expired. *See, e.g.*, *Lewis-Burroughs*, 2015 U.S. Dist. LEXIS 57584, at *17-20 (holding that a Plaintiff's unilateral, supplemental submission of new medical evidence, after the review period expired, "did not restart the time period in which [the insurer] was required to decide her appeal."); *Tomassi*, 2007 U.S. Dist. LEXIS 44223, at *18 n.12; *Sidou v. Unumprovident Corp.*, 245 F. Supp. 2d 207, 216 (D.Me. 2003). Because these additional documents do not change the ultimate outcome of the Court's decision, the Court need not treat this motion as one for summary judgment to address these documents.

of that date.  *See* 29 C.F.R. § 2560.503-1(*l*).  Accordingly, Defendant's motion to dismiss the Amended Complaint and/or for summary judgment is denied.

### B. Motion for Leave to File a Second Amended Complaint

In addition to opposing Defendant's motion, Plaintiff has cross-moved, pursuant to Rule 15(a), for leave to file an second amended complaint to add a count of bad faith under New Jersey law, alleging that Defendant acted in bad faith by delaying Plaintiff's appeal and failing to render a decision on Plaintiff's claim under the IDI Policy.[5]

Federal Rule of Civil Procedure 15(a) permits a plaintiff to amend its complaint "once as a matter of course"; any amendments thereafter may be made "only with the opposing party's written consent or the court's leave."  Fed. R. Civ. P. 15(a)(1)-(2).  Rule 15(a)(2) further directs that district courts should "freely give leave when justice so requires," leaving the decision in the sound discretion of the district court.  *See Merrell v. Weeks Marine, Inc.*, No. 12-0908, 2013 U.S. Dist. LEXIS 107170, at *7 (D.N.J. July 31, 2013).  In that regard, courts should only deny a motion to amend where "the court finds: (1) undue delay; (2) undue prejudice to the non-moving party; (3) bad faith or dilatory motive; or (4) futility of amendment." *Id.*  A proposed amendment to a complaint is futile if "the complaint, as amended, would fail to state a claim upon which relief could be granted."  *Shane v. Fauver*, 213 F.3d 113, 115 (3d Cir. 2000).  Thus, in conducting a futility analysis, district courts must apply the "same standard of legal sufficiency as applies under Rule 12(b)(6)." *Id.* (citing *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d at 1434).

---

[5] Plaintiff does not request leave to amend his complaint to assert a claim of bad faith with respect to the denial or alleged delay of benefits under the Plan, which would be preempted by ERISA.  *See Early v. United States Life Ins. Co.*, 222 F. Appx. 149, 151-52 (3d Cir. 2007) ("State law claims of bad faith and breach of contract . . . ordinarily fall within the scope of ERISA preemption[] if such claims relate to an ERISA-governed benefits plan.").

"Under New Jersey law, 'an insurance company owes a duty of good faith to its insured in processing a first-party claim.'" *Granelli v. Chi. Title Ins. Co.*, 569 F. Appx. 125, 131 (3d Cir. 2014) (quoting *Pickett v. Lloyd's*, 131 N.J. 457, 467 (1993)). "[T]o establish a claim for bad faith in the insurance context, a plaintiff must show two elements: (1) the insurer lacked a 'fairly debatable' reason for its failure to pay a claim, and (2) the insurer knew or recklessly disregarded the lack of a reasonable basis for denying the claim." *Ketzner v. John Hancock Mut. Life Ins. Co.*, 118 F. App'x 594, 599 (3d Cir. 2004), *cert. denied*, 546 U.S. 1089 (2006). "A plaintiff may also demonstrate an insurer's bad faith when the insurer unreasonably delays the processing of a valid claim, and the insurer knows or recklessly disregards the fact that the delay is unreasonable." *Tripodi v. Universal N. Am. Ins. Co.*, No. 12-1828, 2013 U.S. Dist. LEXIS 181807, at *34 (D.N.J. Dec. 31, 2013) (citing *Pickett*, 131 N.J. at 473-74). "In a delay case, 'bad faith is established by showing that no valid reasons existed to delay processing the claim and the insurance company knew or recklessly disregarded the fact that no valid reasons supported the delay.'" *Granelli*, 569 F. Appx. at 131-32 (quoting *Pickett*, 131 N.J. at 457-58).

"Although applied in slightly different circumstances, the 'fairly debatable' and 'unreasonable delay' tests are 'essentially the same.'" *Johnson v. Liberty Mut. Ins. Co.*, No. 10-0494, 2010 U.S. Dist. LEXIS 63043, at *5 (D.N.J. June 24, 2010) (quoting *Pickett*, 131 N.J. at 475). However, under either test, "[t]o establish a bad faith claim, plaintiff must be able to establish, as a matter of law, a right to summary judgment on the substantive claim; if plaintiff cannot establish a right to summary judgment, the bad faith claim fails." *Ketzner*, 118 F. Appx. at 599. "In other words, if there are material issues of disputed fact which would preclude summary judgment as a matter of law, an insured cannot maintain a cause of action for bad faith." *Id.*

Plaintiff's cross-motion focuses primarily on the facts which he asserts constitute bad faith delay on the part of Defendant: that Defendant withheld documents for long periods of time and did not obtain medical records it believed it required to adjudicate Plaintiff's claim until after the deadline for a decision expired. Pl. Opp. Br. 16-17. However, Plaintiff has failed to present any argument that there is no dispute of fact concerning his entitlement to coverage under the IDI Policy – *i.e.*, that his claim was not "fairly debatable" and that Defendant knew of or recklessly disregarded the lack of a reasonable basis for denying, or delaying its decision on, Plaintiff's claim. This is a threshold determination on a bad faith claim in the insurance context.

As plead and argued on this motion, Plaintiff cannot show an entitlement to coverage under the IDI Policy as a matter of law and, thus, allowing him to amend his Complaint to assert a bad faith claim would be "futile" under Rule 15(a). While the Court must accept Plaintiff's allegations of Defendant's bad faith actions as true for the purposes of Plaintiff's motion for leave to amend, *Shane*, 213 F.3d at 115, the Court need not (and cannot) merely accept Plaintiff's claim to entitlement to coverage – a legal conclusion – which Plaintiff's cross-motion ignores. Indeed, both parties fail to adequately address the issue of coverage under the IDI Policy and it appears, at the very least, that the parties dispute whether Plaintiff satisfies the IDI Policy's definition of disability.

Accordingly, Plaintiff's motion for leave to amend the complaint to assert a bad faith claim under the IDI Policy is denied without prejudice. If Plaintiff decides to move for summary judgment on its coverage claim under the IDI Policy, it may also seek to amend its complaint to assert a claim of bad faith denial or delay at that time.

**IV.    CONCLUSION**

For the foregoing reasons, Defendant's motion to dismiss is DENIED, and Plaintiff's cross-motion for leave to file a second amended complaint is DENIED without prejudice.

Dated: March 29, 2016

/s/ The Honorable Freda L. Wolfson

United States District Judge